Eugene THOMAS, Petitioner,

v.

R. M. MUNCY, Superintendent.

Civ. A. No. 75–0102(D).

United States District Court,
W. D. Virginia,
Danville Division.

Jan. 15, 1976.

3) Petitioner was mentally incompetent to stand trial.

4) The alleged murder weapon was illegally seized by law enforcement officers.

5) Petitioner's conviction was obtained by use of a coerced confession.

6) Petitioner's conviction was obtained by use of an involuntary plea of guilty.

7) Certain exculpatory evidence was not disclosed to petitioner by the prosecution.

8) There was error in the trial court's refusal to grant a second degree murder instruction.

9) The verdict was contrary to the evidence.

Petitioner is being detained pursuant to a judgment of the Circuit Court of Pittsylvania County of January 28, 1971, wherein he was convicted of first degree murder and sentenced to life imprisonment. Petitioner appealed his conviction to the Supreme Court of Virginia by way of direct appeal. By order of September 1, 1971, the Supreme Court of Virginia denied and dismissed his petition and affirmed the conviction. Since none of the allegations herein raised were presented to the Virginia Supreme Court, respondents maintain that petitioner has failed to exhaust his available state remedies, as required by 28 U.S.C. § 2254(b) & (c). The court will first address itself to the exhaustion question.

Eugene Thomas, pro se.

Jim L. Chin, Asst. Atty. Gen., Richmond, Va., for respondent.

## OPINION and JUDGMENT

DALTON, District Judge.

Eugene Thomas, an inmate at Powhatan Correctional Center, State Farm, Virginia, has filed this *pro se* petition for a writ of habeas corpus. Read liberally, his petition appears to make the following allegations.

1) He was illegally arrested within the Danville City Limits by County law enforcement officers.

2) His counsel was ineffective because (a) counsel offered no evidence on behalf of petitioner and (b) petitioner was not allowed the right to testify at trial.

■ As to claims four thru nine application of the reasoning of *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963) and *Slayton v. Parrigan*, 215 Va. 27, 205 S.E.2d 680 (1974) by this court in *Robertson v. Riddle*, 402 F.Supp. 144, 145–6 (W.D.Va.1975), clearly mandates a finding that a petition for a writ of habeas corpus to the Supreme Court of Virginia would be ineffective to protect the rights of petitioner, because these claims are nonjurisdictional in nature and were not raised at trial and on appeal. Thus the court will consider these allegations.

736

■ Petitioner's third claim, relating to mental competency, likewise has no jurisdictional basis, but apparently challenges the procedure utilized by the trial court in determining petitioner's competency to stand trial. Since the question was not raised on appeal the Virginia Supreme Court would not entertain a petition for a writ of habeas corpus on that issue. *Slayton v. Parrigan, supra.* The court, therefore, finds the exhaustion requirements satisfied as to this claim and will reach its merits.

■ Petitioner's first two allegations, relating to the legality of his arrest and the ineffectiveness of his counsel, present a different matter. The alleged illegality of his arrest goes to the jurisdiction of the court to hear the matter. And the principles of *Slayton v. Parrigan, supra,* would not apply to an ineffective counsel claim, because that ineffectiveness would not become readily apparent to a layman until after the trial and appeal processes are complete. For these reasons it might be appropriate to dismiss these allegations for failure to exhaust the available state remedy of petitioning the Virginia Supreme Court for a writ of habeas corpus. But the court feels that to follow this course would unnecessarily waste valuable judicial time, both state and federal, not to mention the time of the attorneys who must continue work on this case, should it proceed through the state habeas corpus procedure and then return here. It is for this reason that the court concerns itself over the apparent boilerplate responses by the state's attorneys in cases of this type, where an apparent exhaustion issue exists. Although dealing with a petitioner who had a quite worthy claim the court's reasoning in *U. S. v. Dros,* 260 F.Supp. 13 (S.D.N.Y., 1966), might also apply to situations like the one in question, where the claims are obviously constitutionally without merit. In that case the court stated:

. . . [I]t is clear that there are sharp limits to the sacrifices men must make upon the altar of comity. In cases of much briefer delay, it has been "recognized that inordinate delay in the adjudication of an asserted post-conviction remedy may very well work a denial of due process cognizable in the federal court. [citations]"

When responsible state officials assert that the federal court must stay its hand until some course of state procedure has been run, the assertion must surely be deemed to imply a representation that there are things of substance to be appraised by the state's tribunals. Where, as in this case, there is no basis for such a representation, the duty of the state authorities is clear; they must follow the Constitution that binds us all and see to it that unquestioned and unquestionable rights are speedily enforced.

Before they invoke the exhaustion requirement, the state's lawyers, appearing as officers of the court, will be expected to satisfy themselves that there is at least colorable ground for believing there is something real to exhaust. *Id.,* at 16–17.

Other courts have considered meritless claims and have remarked about the doctrine of exhaustion as it relates to those claims. In *Holly v. Smyth,* 192 F.Supp. 891, 894 (E.D.Va.1961), *aff'd,* 294 F.2d 396 (4th Cir. 1961), it was stated: "The exhaustion doctrine is not absolute or rigid; it rests on comity." The court in *Woodall v. Pettibone,* 465 F.2d 49, 51 (4th Cir. 1972), *cert. denied,* 413 U.S. 922, 93 S.Ct. 3054, 37 L.Ed.2d 1044 (1973), observed: "Exhaustion does not require an exercise in futility." The Eighth Circuit thought it

. . . useless to require [a] petitioner to exhaust his state remedy on a claim that even if true fails to allege grounds upon which any post-conviction relief might be granted. [Citation] Surely, the state courts are not interested, solely for the sake of comity, in processing a meritless claim. *Russell v. Missouri,* 511 F.2d 861, 863 (8th Cir. 1975). *Accord, Ham v. North*

*Carolina,* 471 F.2d 406, 407–8 (4th Cir. 1973).

One further rationale for rejecting an opportunity to dismiss for failure to exhaust available state remedies is found in an opinion by a district court in Wisconsin. There is was said:

> There is some question in this case whether or not the petitioner has adequately exhausted all his available state court remedies. It is my belief that this issue need not be reached in this case. The federal statute says only that a writ of habeas corpus may not be *granted* until state court remedies have been exhausted. However, it does not offend the policies underlying the exhaustion requirement, in my view, to *deny* a writ of habeas corpus in a case where state remedies may not have been completely exhausted. Other federal courts, when faced with similar situations, have adopted this interpretation of the federal habeas corpus statutes and the policies which underlie them. [Citations].

*Edwards v. Cady,* 317 F.Supp. 670, 675 (E.D.Wis., 1970). For any and all of the aforementioned reasons the court will reach the merits of petitioner's first two allegations.

■ Even if true, petitioner's first allegation relating to an illegal arrest does not raise a constitutional issue cognizable by this court. It is well settled that an illegal arrest does not impair the power of a court to try a person. *Frisbie v. Collins,* 342 U.S. 519, 522, 72 S.Ct. 509, 511, 96 L.Ed. 541, 545 (1952).

■ Petitioner alleges ineffective assistance of counsel based on the fact that he presented no evidence, and the failure of petitioner to take the stand in his own defense. The transcript clearly indicates that the decision not to present evidence was a tactical judgment made between the petitioner and his attorney. Transcript, at 54, and as such is not reviewable by a petition for a writ of habeas corpus. *Tompa v. Commonwealth,* 331 F.2d 552 (4th Cir. 1964). Regarding petitioner's second point the court finds that he clearly was afforded the oppor-

tunity to take the stand during presentation of evidence, and that he must therefore object to the trial court's denial of his request to take the stand after the verdict for the purposes of testifying about mitigating circumstances in order to appeal for mercy with regard to the sentence imposed. In Virginia the jury sets the punishment in a criminal case. *Code of Va.,* § 19.2–295 (1975 Repl.Vol.). The jury does this at the time it reaches its verdict. Such a procedure has been held constitutional by the United States Supreme Court. *McGautha v. California,* 402 U.S. 183, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971).

■ Petitioner appears to allege that he was mentally incompetent to stand trial. That issue was inquired into prior to trial. Valid medical opinion convinced the trial court that petitioner was mentally competent to stand trial. It is for the state courts to determine the mental capacity of the defendant, *Poulson v. Turner,* 359 F.2d 588, 592 (10th Cir. 1966), and it is unnecessary for federal courts to inquire into the sanity of the defendant when the issue has been "canvassed" by the state. *U. S. ex rel. Smith v. Baldi,* 344 U.S. 561, 569–70, 73 S.Ct. 391, 395–96, 97 L.Ed. 549, 556–57 (1953); *Pannell v. Cunningham,* 302 F.2d 633, 634 (4th Cir. 1962).

■ Petitioner alleges an illegal search and seizure with regard to the alleged murder weapon. This claim is frivolous. For there to be an illegal search and seizure a search must occur. The murder weapon was turned over to the authorities by petitioner's brother, so there was no search.

■ Petitioner states that a forced confession and an involuntary guilty plea contributed to his conviction. No confession was entered into evidence, and the record plainly shows a plea of not guilty. Both claims are frivolous.

■ Petitioner complains that the prosecution withheld exculpatory evidence from him at trial, but no information is offered as to the substance of this evidence. This allegation raises no cognizable claim as it is now stated.

738

■ Petitioner questions the trial court's denial of a second degree murder instruction. Questions regarding instructions to the jury are matters of state law and procedure not involving federal constitutional issues. *Grundler v. North Carolina,* 283 F.2d 798, 802 (4th Cir. 1960).

■ Petitioner lastly states that the verdict is contrary to the evidence. Since there was an eyewitness to the murder, this claim is frivolous. This court is more than satisfied that there is evidence upon which to base this conviction. *Williams v. Peyton,* 414 F.2d 776 (4th Cir. 1969); *Grundler v. North Carolina, supra,* at 801.

For the aforementioned reasons respondent's motion to dismiss is granted, and this case is ordered stricken from the docket. The petitioner is advised that he may appeal this decision within thirty (30) days to the Fourth Circuit Court of Appeals.

The clerk is directed to forward a copy of this decision to the petitioner and counsel for respondent.